# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

CAMERON C. MONTGOMERY,                    :

    Petitioner,                              :

                                      CIVIL ACTION NO. 14-00539-CG

vs.                                       :

                                        CRIMINAL NO. 13-00273-CG-C-1

UNITED STATES OF AMERICA,                 :

    Respondent.                             :

## REPORT AND RECOMMENDATION

Petitioner, Cameron C. Montgomery, has filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 77).[1] This action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72(a)(2)(R). Following consideration of all relevant pleadings in this case and the evidence presented during the evidentiary hearing held on April 13, 2017, it is recommended that Montgomery's § 2255 motion be **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 30, 2013, Montgomery was charged in a two-count indictment

---

[1]      This is a superseding motion to vacate filed with leave of court after appointment of counsel. (Doc. 77.)  Therein, Petitioner abandons his second ground for relief that was filed *pro se*, that his attorney was ineffective at resentencing because he failed to object to the addition of three criminal history points in Petitioner's second Pretrial Sentencing Report (PSR) due to a burglary, second degree, conviction that appeared only as a pending charge in his first PSR and did not assign criminal history points. (*See* Doc. 60, at 5; Doc. 61, at 4.)  It is clear from the record that his attorney did, in fact, object to the three criminal history points resulting from this conviction both before and during Montgomery's resentencing hearing. (Doc. 69, at 5.)

with possession of a 9mm pistol and 30 9mm jacketed hollow point bullets after having been convicted of a felony offense in 2009, in violation of 18 U.S.C. § 922(g)(1) (Count One) and possessing a stolen firearm in violation of 18 U.S.C. § 922(j) (Count Two). Montgomery filed written notice of intent to plead guilty to Count One of the superseding indictment on February 6, 2014 (Doc. 15) and entered a plea of guilty to this charge on February 18, 2014.  His decision to plead guilty was in concert with a written plea agreement that was executed on February 7, 2014 (Doc. 17).  The plea agreement, signed by Montgomery and his attorney on February 7, 2014, contains an appeal waiver. (*Id*. at ¶¶ 24-27.)  Therein, he waived his right to "file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255." The three exceptions to this waiver were if his sentence included a term of imprisonment in excess of the statutory maximum, if the sentence imposed should constitute an upward departure from the advisory guideline range, or if he desired to pursue a claim of ineffective assistance of counsel. (*Id*.)

After the first sentencing hearing on May 19, 2014, Montgomery was sentenced to one hundred and eighty (180) months imprisonment. (Doc. 26.)  At the end of that hearing, Judge Granade advised Petitioner of his right to appeal:

> Now, Mr. Montgomery, you can appeal your conviction if you believe your guilty plea was unlawful or involuntary or if there is some other fundamental defect in the proceeding that was not waived by your guilty plea.

> You also have a statutory right to appeal the sentence itself in certain circumstances, although you entered into a plea agreement which waives certain of those rights.

> If you do decide to appeal, you must do so within 14 days of entry of judgment in this case and Ms. Colvin could file that notice for you.

2

(Transcript of Sentencing Hearing, Doc. 33 at 7.)[2]

Petitioner did not file an appeal but filed a Motion Under 28 U.S.C. § 2255, (Doc. 28), that was granted by the Court (Doc. 44), due to error in applying the Armed Career Criminal Act's ("ACCA") sentencing enhancement (*see* Doc. 36). Petitioner's sentence was vacated and scheduled for a resentencing hearing. (Doc. 44.) Petitioner was resentenced without the ACCA enhancement to seventy-one (71) months imprisonment on August 28, 2015. (Doc. 58.) The pre-sentence investigation report ("PSR") that was prepared for Petitioner's resentencing hearing ("second PSR") included in the criminal history section a burglary, second degree, conviction, which added three (3) points to Petitioner's criminal history points. (Doc. 49, at ¶ 33.)  He was sentenced on this state conviction on May 22, 2014, three days after his first federal sentencing hearing.  The PSR prepared for Petitioner's original sentencing hearing ("first PSR") showed the burglary, second degree, as a pending charge and assigned no points for it. (Doc. 23, at ¶ 40.)

This second motion pursuant to 28 U.S.C. § 2255 falls within the third exception to the appeal waiver since Petitioner bases his motion solely on an ineffective assistance of counsel claim alleging that his attorney did not file a notice of appeal as instructed after the resentencing hearing. (Doc. 77.) Petitioner contends "he specifically expressed to his counsel that [he] wanted to appeal his sentence of 71 months vs. a possible 24 to 30 month or lesser sentence." (*Id*. at 2.)

---

[2]     Montgomery was notified of these same rights after he was resentenced to 71 months.  (Sentencing Transcript, Doc. 66 at 11.)

3

An evidentiary hearing was held on this sole issue on April 13, 2017; the witnesses called were Petitioner, Cameron C. Montgomery, and his attorney, Richard Shields, Esquire.   Montgomery testified that immediately after resentencing, he specifically asked Shields to file an appeal because he thought the trial judge was wrong when she established an advisory guideline range at 70 to 87 months as opposed to a range of 57 to 71 months.[3]  Petitioner's testimony was that this request was made as he was being escorted to a holding cell by deputy marshals.   Montgomery estimated that the conversation with his attorney lasted approximately two minutes.   According to Montgomery, Shields responded by telling him that he should be happy with the 71-month sentence since it constituted a significant reduction from 180 months that was originally imposed.   On cross, Montgomery confirmed that Shields had given him a dedicated phone number that would allow him to call his attorney directly and avoid the attorney/client communication problems normally associated with being held in a detention facility.   He also testified that he used the number to call Shields on one occasion after the sentencing hearing, not to ask him to appeal the sentence but to inquire if he had filed the appeal.   He was unable to reach Shields on that single occasion and did not state that he left a message for a return call.   Montgomery was also adamant about never signing a Notice-Of-No-Appeal Form (Doc. 77, Exh. 4)[4] or ever telling Shields that he did not want to appeal his sentence.

---

[3]      Pursuant to the terms of his plea agreement, Montgomery's expectation was that he would receive a 57-month sentence even though his attorney counseled that it was his opinion that Judge Granade would impose a 70-month sentence.

[4]      This form, which the district judges of this Court have requested to be filed in those instances where defendants decide not to appeal, is designed to record that attorneys and clients have discussed the advantages and disadvantages of taking

(Continued)

Shields testified that he has practiced law for thirty-six years and has been a member of the Bar of this Court for thirty-two years.  His criminal practice comprises 30 to 40% of his total practice and he has filed and argued numerous appeals in the Eleventh Circuit.  He is very familiar with appellate rights and his duty to discuss the advantages and disadvantages of filing an appeal with his clients.  The attorney/client relationship in this case was established by court appointment after Montgomery successfully had his original 180-month sentence vacated.   (Doc. 44.)   After appointment, Shields met with Montgomery in the detention facility two or three times prior to the sentencing hearing. During these meetings, he discussed the Sentencing Guidelines calculations with Montgomery and stated his opinion that Judge Granade would find the applicable range to be 70 to 87 months which would mean that she would most likely sentence him to 70 months pursuant to the plea agreement which called for a sentence at the low end of the Guidelines. They also discussed filing objections to that portion of the second PSR calculating the Guidelines range to be 70 to 87 months instead of 57 to 71 months. The argument was that the lower range should have been used because Montgomery had not been convicted on the charge of burglary, second degree, until after his first sentencing hearing. *See United States v. Ticchiarelli*, 171 F.3d 24, 35 (1st Cir. 1999) ("[T]he most sensible reading is that the guidelines' reference to 'prior sentence' means, in this context, a sentence which is prior to the original sentence which was vacated and remanded only for resentencing."). Shields candidly informed his client that in his professional opinion the objection would be overruled

---

an appeal, that they have had sufficient time to consider appellate options, and that the defendants signing the form have expressly decided not to file a direct appeal.

since the law in the Eleventh Circuit did not support their argument. Shields' opinion that an appellate attack on this anticipated ruling by Judge Granade as to the sentencing range would lack merit was enhanced during sentencing when Judge Granade made a specific finding as to the appropriateness of the sentence regardless of the advisory sentencing range: "I find the 71-month sentence is an appropriate sentence in this case whether or not my guideline calculations are correct." (Doc. 66, at 9.) This statement, consistent with authority in the Supreme Court and the Eleventh Circuit, effectively rendered any appeal of her decision as to the appropriate sentence range meritless. *United States v. Keene*, 470 F.3d 1347, 1349 (11th Cir. 2006)("'[t]he Supreme Court and this Court have long recognized that it is not necessary to decide guidelines issues or remand cases for new sentence proceedings where the guidelines error, if any, did not affect the sentence.'" (*quoting United States v. Williams*, 431 F.3d 767, 775 (11th Cir. 2005) (Carnes, J., concurring))).

Shields confirmed that a brief discussion was held with his client after resentencing but denied that Montgomery asked him to file an appeal during that conversation.  His testimony was that he instructed Montgomery to call him by using the dedicated phone number if he wanted to file an appeal or discuss his appellate options.  Montgomery confirmed that he had Shields' phone number and actually used it after resentencing, but prior to the expiration of his time to file an appeal, in order to confirm that Shields had carried out his instructions to file an appeal.  He did not reach his attorney on that one occasion and did not leave a message or attempt a second call.

Shields, a respected member of the Criminal Justice Act Panel of Attorneys established by this Court, testified that conferences with his clients to discuss any desire to appeal a sentence immediately after the sentencing hearings are many times

frustrated by the raw emotions of clients when they do not receive an expected sentence and the Marshal's need to immediately place remanded defendants into a holding cell within the courthouse or have them transported to a detention facility offsite.[5]  To deal with this problem, he developed a practice to cover the two scenarios that occur after sentencing.  First, when a client requests that he file an appeal during their brief time to talk immediately after sentencing, he mechanically follows the expressed wish of his client and files an appeal.  He then follows up by engaging in a post-filing discussion of the advantages and disadvantages of taking an appeal.  In the second scenario, where there is little time to talk and a specific request to appeal is not made, the client is directed to call using a dedicated phone number if she or he wanted him to file an appeal.  At that point, he would be able to thoroughly discuss appellate rights with his client and better determine the informed wishes of his client regarding an appeal.  According to Shields, in this case, Montgomery did not ask that he file an appeal during their brief discussion after sentencing and was instructed to call the dedicated number if he wanted to appeal. He also denies that either he or a member of his staff was called by Montgomery to request that an appeal be filed.

This case also involves the added element that Shields was able to talk with Montgomery's family members who attended the sentencing hearing.  The unchallenged testimony of Shields is that he told the members of Montgomery's family

---

[5]     Montgomery was being held in a detention facility in Brewton, Alabama, approximately eighty-three miles from the courthouse.  The drive takes approximately 1.5 hours.

that it was his opinion that any appeal of the 71-month sentence would have no merit[6] and that the family should make certain that if Montgomery wanted to appeal, he should call Shields using the dedicated phone number so that a discussion regarding the merits of taking an appeal could occur.  Shields said that he did not receive a call from Montgomery even though his client clearly knew how to get in touch with his office, Montgomery having used the number four or five times to reach Shields prior to the sentencing hearing.

Shields did not initiate a discussion with Montgomery after resentencing for the purpose of determining the need to file either a notice of appeal or a notice of no appeal.  His practice is not to attempt to have the Notice-Of-No-Appeal form signed during this brief time after sentencing and remand and he did not follow-up by visiting Montgomery in the holding cell after resentencing or traveling to Brewton, Alabama to have one executed.  He relied on the proven ability of his client to reach him by phone.

---

[6]     Shields' assessment that an appeal of the sentence based, in part, on the inclusion of an intervening state sentence between Montgomery's two sentencing hearings would have no merit was clearly reasonable and constituted an accurate interpretation of the law in the Eleventh Circuit. *United States v. Burke*, 863 F. 3d 1355, 1356-60 (11th Cir. 2017) (finding Defendant's state sentence imposed after his initial sentence on conviction for being a felon in possession of a firearm but before the district court vacated that sentence and resentenced him constituted a "prior sentence" within the meaning of U.S.S.G. § 4A1.1(a), such that the district court was required, when calculating defendant's criminal history category on resentencing, to add three points for each "prior sentence" of imprisonment exceeding one year and one month; that is, the fact that Defendant's vacated sentence became void and resentencing occurred *de novo* established that a "prior sentence" under § 4A1.1(a) referred to any sentence imposed before resentencing), *cert denied* 2017 WL 3574361 (October 2, 2017); *see also United States v. Stinson*, 97 F.3d 466, 469 (11th Cir. 1996) ("[W]hen a sentence is vacated and the case is remanded for resentencing, the district court is free to reconstruct the sentence utilizing any of the sentence components.").

Shields could have filed a notice of appeal electronically without the need Montgomery's signature after notification in person or by a telephone call that he wanted to appeal his sentence.

## ANAYLSIS

Section 2255 reads, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

In this instance, Petitioner's argument is that constitutionally ineffective assistance of counsel after resentencing entitles him to the relief afforded by 28 U.S.C. § 2255, namely, an opportunity to file an out-of-time appeal. In order to establish a claim of ineffective assistance of counsel, a Petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see also Jones v. United States*, 478 Fed.Appx. 536, 539-540 (11th Cir. Sept. 23, 2011) ("To make a successful claim of ineffective assistance of counsel, a defendant must show that: (1) his counsel's

performance was deficient; and (2) the deficient performance prejudiced his defense.").[7] "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that []he was prejudiced by that performance." *Demar v. United States,* 228 Fed.Appx. 940, 950 (11th Cir. Jun. 21, 2007) (quotation marks, brackets and citations omitted); *see also Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926, 122 S.Ct. 1295, 152 L.Ed.2d 208 (2002).[8]

The *Strickland v. Washington* standard for evaluating claims of ineffective assistance of counsel "applies to claims, like [Petitioner's] that counsel was constitutionally ineffective for failing to file a notice of appeal." *Roe v. Flores–Ortega, 528 U.S. 470, 477 (2000).* In *Flores-Ortega*, the Supreme Court stated:

> We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. *See Rodriguez v. United States, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969); cf. Peguero v. United States, 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999)* ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit").

---

[7]     "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

[8]     It is proper in considering claims made by a federal prisoner under § 2255 to look for guidance from cases discussing claims raised by state prisoners under 28 U.S.C. § 2254. *See Hagins v. United States*, 267 F.3d 1202, 1205 (11th Cir. 2001) (citing *Holladay v. Haley*, 209 F.3d 1243 (11th Cir. 2000)), *cert. denied*, 537 U.S. 1022, 123 S.Ct. 545, 154 L.Ed.2d 432 (2002).

*Id.* at 477.  In those instances where counsel fails to file a requested appeal, "prejudice is presumed[.]" *Gomez–Diaz v. United States,* 433 F.3d 788, 792 (11th Cir.2005).

The only evidence in support of the claim that Montgomery specifically asked Shields to file an appeal comes in the form of Montgomery's testimony, which is determined not to be credible for a number of reasons.  First, it is self-serving testimony by a witness who is currently attempting to obtain an opportunity to file an out-of-time appeal in the hopes of ultimately getting the United States Supreme Court to rule in his favor and return his case for a third sentencing hearing.

Secondly, the record contains statements presented by Montgomery under oath that are not true. In his second motion for collateral relief, Montgomery claims that Shields failed to object to the use of a state conviction for burglary, second degree, that came after the first sentencing hearing and increased his criminal history category with the impact of increasing the advisory range for sentencing.  (Doc. 60, at 5 ("Counsel provided ineffective assistance of counsel for failing to object to the government using the burglary conviction to contribute criminal history points to calculate the guideline range when the conviction was not used during the initial sentencing hearing."); Doc. 61 at 4 ("Defendant argues that the Attorney provided ineffective assistance of counsel for not objecting to the use of the prior Burglary Conviction CC20112-2887, to contribute criminal history points in calculating the total criminal history points under section

11

4A1.1.")).  However, the record is crystal clear that Shields aggressively argued before and during the resentencing that Judge Granade should not apply the three criminal history points associated with the 2014 burglary conviction because it occurred after his original sentence in this case.  (Doc. 55 at 2 ("The Defendant objects to the three (3) criminal history points given to him … at paragraph 33 in the presentence report.  The original presentence report reflected this as a pending charge."); Doc. 66, at 4 ("the objection is the use of the post-plea state offense that was still simply a pending charge at the time of the original sentencing.")).  The inaccuracy of the information provided by Montgomery in his sworn statements is confirmed by his withdrawal of this particular allegation of ineffective assistance once counsel was appointed and he was allowed to supersede his *pro se* motion.  (Doc. 77 (The only allegation of ineffective assistance of counsel is that Shields, after consultation with Montgomery, failed to file an appeal as he was directed.)).

Third, the testimony of Shields is found to be credible because he is an experienced criminal defense lawyer who clearly understood his duty to file an appeal at the request of his client. The evidence does not support a finding that Shields deliberately or unintentionally failed to file a notice of appeal at the specific request of his client. A decision to ignore a specific request that an appeal be filed defies logic given that Shields was serving in an appointed capacity, had no personal interest in the outcome of the case, and would have likely represented Montgomery on appeal as well.

12

Fourth, Judge Granade sentenced Montgomery to 71 months, a sentence that falls within the Sentencing Guidelines range (57-71 months) argued to be correct by Montgomery, making any appeal of the sentence clearly precluded by Montgomery's appellate waiver executed as part of his plea agreement. Shields had thoroughly discussed the probability of a 70-month sentence with his client and how such a sentence would be subject to the appellate waiver in his plea agreement. The fact that he actually was sentenced to 71 months is of no consequence since that sentence falls within either of the proposed advisory sentencing ranges as well.

Finally, the 71-month sentence falls within both sentencing ranges and constitutes a presumptively reasonable sentence regardless of the correct range, which we know now to be 70 to 87 months based on the Eleventh Circuit's decision in *Burke*.

Montgomery has not shown by a preponderance of credible evidence that he specifically requested Shields to file an appeal after the sentencing hearing was completed. The evidence does not establish that Petitioner ever triggered the *per se* duty to file an appeal as directed by the Supreme Court in *Flores-Ortega*. Instead, the preponderance of evidence convinces the undersigned that Montgomery, and his family members, were instructed by Shields to use a dedicated phone number to call him if the Defendant wished to file an appeal. When neither Montgomery nor any of his family members contacted Shields, he assumed that the Defendant was convinced that his appeal would have no merit

13

and, for that reason, did not wish to file an appeal.

Even in instances in which no request to appeal is made, however, counsel is obligated to consult with his client when there is reason to think either that "a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal)," or that the defendant "reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480.

> To satisfy the consultation obligation when it arises, counsel must "advis[e] the defendant about the advantages and disadvantages of taking an appeal and mak[e] a reasonable effort to discover the defendant's wishes." *Id.* at 478. If counsel has a duty to consult but fails to satisfy it, his deficient performance is established, and the defendant establishes resulting prejudice by showing that, but for counsel's failure to consult, he would have appealed. *Gomez–Diaz*, 433 F.3d at 792.
>
> Relevant factors in determining if a rational defendant would want to appeal include: (1) "whether the conviction follows a guilty plea"; (2) "whether the defendant received the sentence he bargained for"; (3) "whether the plea [agreement] expressly ... waived some or all appeal rights"; and (4) whether there are "nonfrivolous grounds for appeal." *Otero v. United States*, 499 F.3d 1267, 1270–71 (11th Cir.2007) (internal quotes omitted).

*Gavin v. U.S.*, 2009 WL 692046, *2 (S.D.Ala. Mar. 13, 2009).

Shields had discussed with Montgomery during his meetings prior to resentencing, and to those family members that attended the resentencing hearing, that any appeal filed in this action would have no merit.  Montgomery had waived his right to appeal a sentence that was within the guidelines range, which it was, and Judge Granade had made clear during sentencing that the 71-month sentence was the appropriate sentence regardless of an ultimate decision as to the appropriate advisory sentencing range.  Under these circumstances, even if deficient performance is assumed

14

because Shields did not confer with Montgomery after sentencing in a meaningful way, it is determined that Montgomery has not met his burden of showing prejudice by demonstrating that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely filed an appeal. *See Flores-Ortega*, 528 U.S. at 484 ("[W]e hold that, to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed.").

Montgomery knew of his right to appeal, that such an appeal had to be filed within 14 days after the entry of judgment, and that his appointed counsel could file the appeal on his behalf. (*See* Sentencing Transcripts, Doc. 33, at 7 and Doc. 66 at 11.) Shields had given Montgomery a dedicated phone number to use should he need to discuss filing an appeal and instructed the family members to ensure that Montgomery contacted him if he wanted to appeal the sentence.[9] Montgomery testified that he attempted to call Shields prior to the running of the time for filing an appeal to confirm that an appeal had been filed but when he was not able to get him on that one occasion, he did not try to contact him again, either directly or through a family member. His § 2255 motion was not filed until April 8, 2016, approximately seven months after the entry of judgment on August 28, 2015. No clear explanation was provided, however, as

---

[9]       Montgomery did not present any evidence that his family members had any problems contacting him at the detention facility. They were present during resentencing and were clearly there to support the Defendant. Although Montgomery initially listed them as witnesses to the conversation between him and Shields after the resentencing hearing, they were not called as witnesses during the evidentiary hearing and were not in attendance.

to why he lost interest in trying to make sure that an appeal had been filed after the one unsuccessful phone call.

"Thus, after examining [Montgomery's] ineffectiveness claim in light of all of the evidence, he has failed to establish prejudice." *Medina v. United States*, 167 Fed.Appx. 128, 135, 2006 WL 334029, at *7 (11th Cir. Feb. 14, 2006) (citation omitted).

## CERTIFICATE OF APPEALABILITY

In consideration of the foregoing, the Magistrate Judge recommends that the Court deny Montgomery's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. Moreover, pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Here, Montgomery's habeas petition is being denied on the merits, such that a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see also id*. at 483-484, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the

petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"); *see Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). Therefore, it is recommended that the Court find that reasonable jurists could not debate whether Montgomery's § 2255 habeas petition should be resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. Accordingly, petitioner is not entitled to a certificate of appealability with respect to the sole claim of ineffective assistance of counsel.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson,* CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. Jun. 28, 2011) (providing for the same procedure), *report and recommendation adopted,* 2011 WL 3241580 (S.D. Ala. Jul. 29, 2011); *Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## CONCLUSION

17

The Magistrate Judge determines that Petitioner's rights were not violated in this cause and that his request to vacate, set aside or correct his sentence (Doc. 77) should be **DENIED**. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

<u>**NOTICE OF RIGHT TO FILE OBJECTIONS**</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); S.D. Ala. GenLR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 25th day of October 2017.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**